The case for argument this morning is United States v. Carlberg.  We're asking that this court order that the district court grant the motion for judgment of acquittal reverse the district court's denial of that motion. Our reasons are this, my client Scott Carlberg worked as an engineer on a railroad and was injured, exposed to electrocution. As a result of that injury, my client was deemed entitled to occupational disability benefits. He is entitled to these benefits so long as he cannot return to his former position as an engineer of locomotives. He was severely injured both physically and mentally and the injury also resulted in a settlement of a claim against his former employer which netted Mr. Carlberg $450,000. Mr. Carlberg used this cash to purchase a tanning salon in Menomonee, Wisconsin, rural Wisconsin where he lived and since purchasing the salon in 2015 ran it at a loss or as a result of that loss, Mr. Carlberg has not only spent his money through the settlement but also incurred debts to his stepfather, incurred credit card debt and so on and so forth trying to run this business. And so it's our position in this court that the conviction should not stand because if there was fraud committed here, it's immaterial. The government cannot show as it must under the wire fraud statute that the public fisc has been harmed and the fraud actually constitutes property fraud against the United States. And that is, that's our position, your honors. I'm happy to answer any questions that the court would have. I see none. I do have one question. I noticed in the restitution, the restitution begins, it appears, about a month and a half before this entity, this tanning salon was purchased. Is there an error in the computation of the restitution? It's our position on appeal. Your honor, I think there is an error but it relates, in our view, to the fact that Mr. Carlberg is entitled to occupational disability. I understand. I read your brief. No, this would be a far more technical and not as advantageous savings to your clients but it would be somewhat of a savings. It just seemed to me the restitution began to run a little early. Okay. And is your honor referencing the gap between, I believe it's March 2015 and the actual closing in May? I think that's basically the problem as I recall, yeah. Okay. Well, I think there was that inaccuracy in the record and it's continued to be relied on by the government in this court and that is that part of the fraud related to Mr. Carlberg having purchased the tanning salon in March when, in fact, the transaction didn't close until about two months later in May. If I could conclude my remarks with just a vivid fact, which we argue supports entering a judgment of acquittal, and it's this. The government acknowledges this, that Mr. Carlberg was, in fact, living at the tanning salon. So, my client was homeless, living hand-to-mouth and, you know, it's not, there is no materiality. The government cannot and did not show that he defrauded the government out of money that he was not entitled to. Let me ask you this based on the answer you gave Judge Ripple. Twice, you've emphasized to us that he was entitled to the occupational disability check he was receiving. Is Mr. Carlberg disputing that the regulations have that check coming in, you're entitled to those up to certain earning thresholds? So, you can still work if you're getting occupational disability, but up to a certain earning threshold, at that point, the government is interested in whether they might reduce your check. Does he dispute that? I think there is a bit of a dispute there, Your Honor. It's our position that, and I believe the government, and we cite it, we rely on this quite heavily. It's in the district court docket entry 177-1, and this is the government's own evidence submitted during sentencing that acknowledges that Mr. Carlberg is entitled to occupational disability so long as he cannot return to his job as an engineer of a locomotive. And so, purchasing this tanning salon doesn't negate that. Now, in connection with occupational disability, we acknowledge that there is this reporting requirement. Yes. But, I don't think it applies as strictly to negate his entitlement to occupational disability, but rather... It's just a whole separate crime, right? Because the certification says, if I'm receiving a disability annuity and I fail to report work and earnings promptly, I am committing a crime punishable by federal law that may result in criminal prosecution and or penalty deductions in my annuity payment. So what's Mr. Carlberg's position on that certification? Well, a couple things. He called the helpline constantly. We put that in our brief. And so, we would rely on that, that he did have the intent to do his best to report. And so, but the second point would be that, let's assume that he did not report properly and he had an intent to defraud the government. Our point, our ultimate point, is that my client is living in poverty in rural Wisconsin. He cannot materially defraud the government. There's no property fraud. He is entitled to this money, these disability payments, because he's never going to meet that threshold. And so, I think whereas the government, and I'm sure I'll be corrected if I'm getting this wrong, but I think the government's argument is he performed substantial gainful activity, irregardless of him bringing in money or not. He could work 22 hours a day at an unprofitable business and that still constitutes substantial gainful activity if you don't report it to the government. Our position is that that is not so for two reasons. At trial, the government didn't proceed on that basis. They tried to present the tanning salon as a profitable business. But the second point is that, in fact, if my client's going to be convicted of a crime and serve a term in prison, there should be proof that, in fact, this was a material crime committed and the government has been deprived of property and we just don't see that here. Okay, well, I'm satisfied. You're into your rebuttal time, so I'm done asking you questions. Thank you. Mr. Fox. Good morning. May it please the Court, Counsel, Charles Fox on behalf of the United States. So turning to Judge Ripple's question from a moment ago regarding the calculation of the restitution award, it's correct that the restitution award is based on disability payments that were made beginning in April of 2015, which is before when the transaction to purchase the salon closed. But as discussed in that document that Counsel was just referencing a moment ago, that's at R177-1, the RRB concluded that Mr. Karlberg was engaged in significant work activity beginning in March of 2015, meaning that he would have been disqualified from receiving the disability benefits payments beginning at least in April 2015 had they had accurate information. And therefore, that supports the inclusion of those months before the actual purchase of the tanning salon within the restitution award. Turning more generally, the Court should affirm the District Court's ruling in full in this case. There was sufficient evidence to support the District Court's denial of the defendant's motion for acquittal. However, the governments at trial established that the defendant made many misrepresentations regarding his work activity to the Railroad Retirement Board. And it also established that those were the sorts of misrepresentations that could affect the Railroad Retirement Board assessment of whether an individual remained entitled to receive disability benefits. Indeed, there was specific testimony from Clifton Rucker at trial that the Retirement Board asked whether he owned a business, how many hours he was working at a business, how many employees he had, et cetera, et cetera, in order to make an accurate assessment as to whether an individual remained entitled to benefits and the level of those benefits. And those are the exact categories of information that the defendant repeatedly misrepresented to the Retirement Board and concealed by declining to respond to his annual reminders that he was obligated to provide such information. Now, the defendant's position, as was just elaborated, is something that he had to actually earn some income threshold and that he couldn't do that because he was living in poverty and living in the tanning salon. And there are multiple factual and legal issues with that position. The primary issue is that, legally, he didn't have to earn any threshold in order to be disqualified from receiving retirement benefits. He could be disqualified based solely on his work activity alone. And there was plenty of evidence put into the record at trial that the defendant was engaging in substantial work activity during this period. Additionally, to the extent it's relevant to the court, the defendant was only living in the tanning salon for a brief period of time. He wasn't living there out of poverty. He was going through divorce proceedings with his wife and apparently temporarily relocated there. But there's no suggestion that the defendant was somehow destitute during this period. And, indeed, there was testimony that he was using significant funds from the tanning salon to pay off his personal credit card bills. Now, of course, he says that he's paying his credit cards from the tanning salon money to repay himself for the loan that he made for the purchase of the property. So what's your response there? Well, I think the evidence shows that the funds were flowing to his personal credit card bills. And I don't believe there's sufficient evidence regarding whether he's paying off a loan that he gave himself to pay the purchase price of the salon. But in any event, it just doesn't matter because what's relevant here is whether the defendant was engaging in actual work activity that would disqualify him from receiving benefits. That's really the basis that the court should be focused on, is the defendant's work activity rather than whether he was repaying himself for some sort of loan. It seems, based on the defendant's reply brief, that he is sort of conceding now that the types of benefits he's receiving are property under the Wirefraud statute. But in any event, there shouldn't be any dispute that the almost $280,000 in benefits that the defendant received, as well as the sort of fringe benefits from the disability freeze tax advantages and Medicare coverage constitute property within the meaning of the Wirefraud statute. And the District Court's calculation of the restitution award was also adequately supported by sufficient evidence in this case. The District Court received both the document I was just talking about, an R-177-1 from the RRB, and also received extensive testimony at a sentencing hearing regarding the method that the RRB would have used to assess whether the defendant was entitled to receive disability benefits had it been receiving accurate information. And the defendant does not raise any legitimate objection to either the methods of the Retirement Board making that calculation or the District Court's reliance on it. If there are no further questions, I'm happy to yield the rest of my time. Thank you, Mr. Fox. Anything further, Mr. Morrison? Just one brief point, I'd like to address the restitution. Counsel just stated that appellant has no objection to this evidence that was put in at sentencing to support the restitution. We strenuously object. That testimony created a hypothetical world where Mr. Carlberg would be earning a salary of $60,000 in the largest metropolitan area, I think it's about 35 or 40 miles away, Eau Claire, Wisconsin. Of course, this is no comparison to what we have here. We have a business owner with a tanning salon in Menomonee, Wisconsin, struggling to get by, actually paying other people to work for him at his salon. And so the District Court relied on this world where Mr. Carlberg is earning $60,000 a year in Eau Claire, which just bears no resemblance to what actually happened in this case. I see I'm out of time. Thank you. Thank you, counsel. And Mr. Morrison, the court appreciates your willingness to accept the appointment in this case. The case is taken under advisement.